IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANDRES LOZANO and MELISSA LOZANO, on behalf of themselves and as parents and guardians for their minor children Antonio Lozano, Nicolas Lozano, Emilio Lozano, and Andrea Lozano, and on behalf of all others similarly situated | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) ) | |
| v. | ) ) ) | No. 11 C 8258  Judge John A. Nordberg |
| UNITED CONTINENTAL HOLDINGS, INC. and CONTINENTAL AIRLINES, INC. | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, a family of six, flew on a Continental Airlines flight from Edinburgh, Scotland to a final destination of Charleston, S.C. However, their flight was over 50 hours late in arriving. Upset with the delay, plaintiffs contacted the British Civil Aviation Authority ("CAA") seeking compensation under a European Union regulation known as EU 261. Adopted in 2004, EU 261 requires airlines to pay standard amounts of compensation for delays or cancellations of flights departing to, or arriving in, an EU Member State. If applicable here, it would require that 600 Euros be paid to each of the six family members.

The CAA wrote a letter to Continental Airlines requesting compensation for plaintiffs. Continental responded that no compensation was required because the flight was delayed by a last-minute mechanical problem which Continental believed constituted an "extraordinary circumstance" as defined by EU 261. The CAA relayed this information to plaintiffs and advised them that they could a file a legal claim in London County Court.

Instead of pursuing this option, plaintiffs filed a class action lawsuit here in Chicago. The proposed class consists of all people in the United States who have been on any Continental flight since November 18, 2009 that departed from an EU member state where the flight was delayed over 3 hours (or cancelled) and where the delay was not due to extraordinary circumstances. In their original complaint, plaintiffs did not bring a claim directly under EU 261.

Instead, they asserted a breach of contract claim under Illinois law and then argued that EU 261 was incorporated by reference into the contract of carriage because a copy of the regulation had been posted on Continental's website. Continental (we use the singular term for both defendants) filed a motion to dismiss the single claim for breach of contract. Before briefing was complete, plaintiffs filed an amended complaint adding a second claim directly based on a violation of EU 261. Because this claim was not addressed in Continental's opening brief, we only considered the arguments for dismissing the breach of contract claim in Count I. We dismissed Count I, finding that there was no intent to incorporate EU 261 into the passenger contract. *See* Dkt. # 50. We then set a briefing schedule on Count II. Each side has filed lengthy and well-written briefs addressing whether Count II – and thus this entire lawsuit – should be dismissed with prejudice.

Continental asserts three arguments for dismissing Count II: (1) that EU 261 does not create a private right of action to file a claim in U.S. courts; (2) that the EU 261 claim is barred by the Airline Deregulation Act; and (3) that the EU 261 claim is barred by the Montreal Convention. As explained below, we agree with Continental's first argument and therefore will not address the latter two arguments.

We begin by summarizing each side's arguments. Plaintiffs argue that it is a "basic tenant of EU law" that EU regulations such as EU 261 normally create private rights of actions allowing individuals to file court claims.[1] (Pl. Resp. at 7.) Plaintiffs cite to several decisions from the European Court of Justice supporting this general point. (*Id.* at 7-8.) For example, *Francovich and Bonifaci v. Italian Republic* [2] states that it is the duty of national courts to "apply provisions of Community law in areas within their jurisdiction" and that this duty "entail[s] the grant of rights to individuals." *Id.* at 8. Plaintiffs also state that "numerous courts in Europe" have specifically allowed individuals to file EU 261 claims, thus "confirming that a private right of action under EU 261 exists." *Id.* at 8-9 (citing cases).

The text and structure of EU 261, according to plaintiffs, also supports their interpretation. The regulation creates "two separate avenues for unsatisfied passengers – complaints to administrative bodies or actions for compensation in civil courts." *Id.* at 12. Paragraph 22 of the preamble describes this two-tiered approach:

> Member States should ensure and supervise general compliance by their air carriers with this Regulation and designate an appropriate body to carry out such enforcement tasks. The supervision should not affect the rights of passengers and air carriers to seek legal redress from courts under procedures of national law.

---

[1] It is not clear whether EU law uses the specific phrase "private right of action" as is used by American courts.

[2] Joined Cases 6 & 9/90, 1991 E.C.J. 1-05357 at ¶¶ 32, 40.

The "appropriate body" created by each Member State is referred to as the National Enforcement Body ("NEB"). Plaintiffs rely on the last sentence of paragraph 22 – stating that passengers may seek "legal redress from courts under procedures of national law" – and argue that it evidences an intent by the EU to allow passengers to file their EU 261 claims in courts anywhere in the world. The other textual provision relied on by plaintiffs is Article 15.2 of EU 261. It states (in relevant part) that if passengers receive "inferior" compensation, they "shall still be entitled to take the necessary proceedings before the competent courts or bodies in order to obtain additional compensation." The phrase "competent courts" is again interpreted by plaintiffs to include courts outside the EU.

Plaintiffs also attach to their brief a 2010 report prepared for the European Commission Directorate-General Energy and Transport. *Id.* at 9; Ex. 2. This lengthy report – entitled "Evaluation of Regulation 261/2004" – notes that a number of passengers have asserted claims under EU 261 in civil courts. *Id.* The report also states that some National Enforcement Bodies have failed to provide administrative remedies as required, while others are "often understaffed and ineffectual." *Id.* The report concludes that "[g]iven the limited effectiveness of some of the NEBs, and that many focus on enforcement rather than assisting passengers with individual claims, it is not surprising that passengers have used alternative processes to obtain redress, usually simplified procedures for small claims in civil courts." *Id.* (quoting Report at pp. 78, 81.) All of the above evidence, plaintiffs argue, leaves no doubt that EU 261 confers rights of private enforcement to file the claims in courts outside the EU. Plaintiffs emphasize throughout their brief that this case was filed in an American court by American passengers against an American corporation.

In response, Continental argues that, although it agrees that EU 261 does confer a private right of action to file claims in the courts of *an EU Member State*, it does not create a right to file such claims *outside the EU*, such as in American courts. Continental claims that the text of EU 261 "expressly confines" the private right of action to courts in the EU. Continental, like plaintiffs, points to preamble paragraph 22. However, contrary to plaintiffs who interpret the phrase "national law" to mean the law of *any* nation in the world, Continental views this phrase and other related phrases as being confined to the national law of Member States. The cases cited by plaintiffs, according to Continental, are consistent with this position as those cases only support the limited proposition that passengers may file EU 261 claims in EU courts. Continental notes that the cases cited by plaintiffs in fact undercut their argument because those cases state that "the European Union established a unified legal order under the EU Treaty so as to foster consistent judicial interpretations of law in the European Union." (Defs. Reply at 4.) Allowing EU 261 claims to be adjudicated in the U.S. would be "contrary to the intent of the European Union to foster and protect its own legal system and, thus, stands to 'jeopardize' the sovereignty of the European Union." *Id.* at 5 (*citing IATA and ELFAA*, [2006]. E.C.R. I-403 at ¶ 27.) Finally, Continental argues that plaintiffs cannot overcome the presumption against finding a private cause of action under foreign law. *Id.* at 6-7 (*citing McKesson Corp. v. Islamic Republic of Iran*, 539 F.3d 485, 489 (D.C. Cir. 2008) (noting that there is a general presumption that international treaty laws do not "provide for a private cause of action in domestic courts")).

To summarize, both sides agree that the overarching question is whether the EU intended for EU 261 to be applied extraterritorially by specifically allowing passengers to file claims under this regulation in courts outside the EU. Although each side has made strong arguments, neither side has pointed to any definitive piece of evidence. The legal authority is sparse. Both sides focus on only a couple of sentences from the seven-page text of EU 261. Both sides make arguments about the larger structure and purpose of EU 261, but these arguments remain at a fairly high level of abstraction. Both sides cite to ECJ decisions, but none seem to address the specific issue in any direct way. Plaintiffs rely on a 2010 report assessing how EU 261 has worked in practice but, as discussed below, this report could support many different interpretations and the report also fails to address this issue head-on.

With these caveats in mind, and after reviewing the parties' arguments and authorities, we are persuaded by Continental's argument that plaintiffs have not pointed to sufficient evidence from which we could conclude that the EU intended for EU 261 to be enforced outside the legal systems of EU Member States. We begin with the text of EU 261. As summarized above, preamble paragraph 22 states that passengers may seek redress under "national law" and Article 15.2 states that they may file claims before "competent courts." Viewed in the abstract, these two phrases arguably could support a broader right to file an EU 261 claim in any court worldwide. However, we find that the better interpretation is that the EU contemplated and intended that such claims would be filed only in the courts of Member States. In terms of its overall structure, EU 261 consistently uses the phrase "Member States" when discussing various rights and duties. For example, EU 261 limits its scope to flights departing from or arriving in Member States. *See*, *e.g.*, Preamble ¶ 6; Article 3.1(a). Article 16 states that "[e]ach Member State shall designate a body responsible for the enforcement of this Regulation *as regards* flights from airports situated on its territory and flights from a third country to such airports." These provisions thus directly tie enforcement to the "territory" of a "Member State." The *Francovich* case relied upon by plaintiffs likewise refers to the fact that each national court will apply Community law "in areas within their jurisdiction." The 2010 report consistently refers to Member States when discussing enforcement of EU 261. In fact, we did not see any reference in the report to a claim being filed outside the legal systems of Member States.[3]

Continental's interpretation of the text of EU 261 is also more consistent with the larger structure of the EU legal system. As Continental points out, the EU has expressed concern about the consistency of judicial enforcement among the courts of Member States. For example, in the *IATA and ELFAA* case, cited by plaintiffs in their brief, the European Court of Justice stated: "Differences between courts of the Member States as to the validity of Community acts would be liable to jeopardise the very unity of the Community legal order and undermine the fundamental requirement of legal certainty." (Dkt. # 61-1 at 21.) However, if plaintiffs' interpretation were correct, then this goal of legal unity and certainty would be further jeopardized by the possibility

---

[3]The report was submitted to the Court by plaintiffs. *See* Dkt. # 60-2. Based on the page numbering, the report appears to be 82 pages, although the excerpt provided to the Court begins on page 39. This Court therefore has not reviewed the first 38 pages.

that foreign courts, which would not be subject to direct review by the European Court of Justice, would issue conflicting rulings. In particular here, where plaintiffs are seeking to bring class action claims, this concern would be even greater. The proposed class would consist of all U.S. passengers who since November 2009 have flown on a Continental flight departing from an EU Member State where there was a delay or cancellation that was *not* caused by "extraordinary circumstances." This would presumably require this Court make a determination whether each of these flights met the "extraordinary circumstances" exception. But each of these flights likely would have also had non-U.S. passengers who could be simultaneously pursuing EU 261 claims in either the NEB or the court system of the EU Member State, thus creating the possibility of conflicting rulings about whether the conditions of each of these many flights were sufficient to meet the EU's definition of an "extraordinary circumstance." Perhaps due to this concern, the NEBs for each Member State have developed a practice of forwarding any EU 261 complaint back to the NEB of the Member State from which the flight departed. *See* 2010 Report, Dkt. 60-2 at 14 ("with few exceptions, complaints relating to flights departing from other States are forwarded to the NEB of *the State which is competent to handle* the complaint") (emphasis added); Dkt. # 60-2 at 29 ("Most of the NEBs now forward complaints to other NEBs when they receive complaints that *are not within their jurisdiction*") (emphasis added).

To be sure, there are some legitimate counter-arguments. It is true as plaintiffs have pointed out that the larger purpose of EU 261 was to better protect and compensate passengers who have suffered from airline delays and cancellations. As plaintiffs point out, the 2010 report states that the administrative remedies created by EU 261 have not always been effective in every Member State. Plaintiffs seem to believe that the solution to this problem is to allow passengers to file their claims in courts outside the EU. While extraterritorial enforcement could be one remedy, the EU equally could conclude that this practice would have the opposite effect by taking away any pressure or incentive for these Member States to adequately comply with the regulation.

In sum, we conclude, based on the evidence provided by the parties, that the EU did not clearly intend to authorize a private right of action under EU 261 to file claims in courts outside the EU. For all the above reasons, we grant defendants' motion to dismiss Count II with prejudice.

**ENTER:**

_____
**JOHN A. NORDBERG**
**Senior United States District Court Judge**

**DATED:** September 26, 2013